**SO ORDERED.**

**SIGNED this 13th day of February, 2017.**



*Dale L. Somers*
Dale L. Somers
United States Bankruptcy Judge

___

**Opinion designated for print and online publication**
**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| In re: | |
| COOPER, INC., | CASE NO. 16-11235 |
| | CHAPTER 11 |
| DEBTOR. | |

**MEMORANDUM OPINION AND JUDGMENT**
**GRANTING SEDGWICK COUNTY'S MOTION FOR RELIEF FROM STAY**

Prior to the filing of Debtor's voluntary petition under Chapter 11 on July 5, 2016, the Board of County Commissioners of Sedgwick County, Kansas (Sedgwick County) commenced a tax lien foreclosure case in the Sedgwick County District Court in which it sought to sell a parcel of land owned by Debtor Cooper, Inc. After a judgment was entered and the property was sold, but before the sale was confirmed or the deed was issued, Debtor filed a motion to set aside the sale. After a hearing at which the district

court orally denied the motion, Debtor filed its petition in this Court.

The matter before the Court is the motion of Sedgwick County for relief from stay to allow the Sedgwick County District Court to enter a proposed "Journal Entry Denying Defendant Cooper, Inc.'s Motion to Set Aside Default Judgment and Sheriff's Sale as to Parcel No. 161," and order the disbursement of the sale proceeds. Sedgwick County appears by J. Michael Morris of Klenda Austerman LLC. Debtor appears by Michael J. Studtmann and James T. McIntyre. The Court has jurisdiction.[1] For the following reasons, the Court finds that relief from stay will be granted because when the bankruptcy petition was filed, Debtor's interest in the property was not sufficient to warrant stay protection. Simply put, Debtor waited too long to file for bankruptcy relief.

**FINDINGS OF FACT.**

The parties have stipulated to the following facts.[2]

Among the assets listed on the schedules in this case is real estate located at 1557 S. Hydraulic, Wichita, Kansas (the Property). Prior to the filing of this case, the Property (identified as Parcel 161) was the subject of a tax foreclosure case filed in the District Court of Sedgwick County, Kansas, on January 14, 2016, by the Board of County

---

[1] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and § 1334(a) and (b) and the Amended Standing Order of Reference of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective June 24, 2013. D. Kan. Standing Order No. 13-1, *printed in* D. Kan. Rules of Practice and Procedure at 168 (March 2016). A motion for relief from stay is a core proceeding which this Court may hear and determine as provided in 28 U.S.C. § 157(b)(2)(G). There is no objection to venue or jurisdiction over the parties.

[2] Doc. 58.

Commissioners of Sedgwick County, Kansas (the County). By order dated April 26, 2016, the district court entered a judgment against the Property for $28,351.46. Pursuant to the judgment, the Property was sold to a third party at a sheriff's auction on May 26, 2016, for $70,000.

Before the sale was confirmed or the deed issued, on June 15, 2016, Debtor filed a Motion to Set Aside Default Judgment and Sheriff's Sale, premised upon the argument that service on Debtor was improper. The motion was heard on June 29, 2016, with evidence and testimony being received. The district court orally denied the motion and directed the County's attorney to prepare a journal entry. The County's attorney prepared a Journal Entry Denying Defendant Cooper, Inc.'s Motion to Set Aside Default Judgment and Sheriff's Sale as to Parcel No. 161 (the Journal Entry), but this bankruptcy case was filed before it was entered.

The last paragraph of the stipulation reads: "Other than the Debtor's contention concerning service, as set out in the motion to set aside, the foreclosure procedure and the tax sale were in full compliance with Kansas law. The tax sale itself was regularly conducted under Kansas law, with competitive bidding being allowed."[3]

**ANALYSIS.**

Debtor's schedules list the Property as owned in fee, with an appraised value of $168,000, subject to the County's lien in the amount of $30,000. The County has moved

---
[3] Doc. 58 at 2.

for relief from stay to allow the Journal Entry to be filed and the state court to order the disbursement of the sale proceeds, pursuant to state law.[4]  Section 362(a)[5] provides that the filing of a petition under the Bankruptcy Code operates as a stay of proceedings against property of the estate.  Section 362(d) provides for relief from that stay.  It states in part:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this title . . . —
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; [or]
> (2) with respect to a stay of an act against property under subsection (a) of this section, if —
> (A) the debtor does not have an equity in such property; and
> (B) such property is not necessary to an effective reorganization.

Section 362(g) provides that the party requesting stay relief has the burden of proof on the issue of the debtor's equity in the property, and the opposing party (Debtor in this case) has the burden of proof on all other issues.

**A. Under Kansas law, on the date the bankruptcy petition was filed, Debtor's interests in the Property were limited to possession and bare legal title without a right of redemption.**

When a bankruptcy case is filed, an estate is created that is generally comprised of the debtor's legal and equitable interests in property, and a stay is automatically put in place protecting that property.  In bankruptcy cases, "[p]roperty interests are created and

---

[4] Doc. 22.

[5] 11 U.S.C. § 362(a).

4

defined by state law."[6] The Court therefore examines Kansas law addressing the foreclosure of tax liens to determine what Debtor's interest in the Property was when the bankruptcy petition was filed.[7]

The Office of the Kansas Attorney General has described the Kansas real property tax lien foreclosure process as follows:

> The board of county commissioners is "authorized and empowered to levy taxes in each year for the general fund and other county purposes." On or before November 1 of each year, the county clerk finalizes the tax levy rate for each piece of real property and delivers the final tax roll to the county treasurer. "Each year after receipt of the tax roll from the county clerk and before December 15, the county treasurer shall mail to each taxpayer, as shown by the rolls, a tax statement. . . ." A taxpayer may pay his entire county tax bill by December 20 of each year, or may choose to pay half of the taxes by December 20 and the other half of the taxes by the following May 10. If a taxpayer does not pay his county taxes in full by the following May 10, the taxes become delinquent and the real estate for which such taxes are owed may be sold by the county.
>
> The process of selling real estate for delinquent taxes begins in early July when the county treasurer compiles a list of properties for which taxes are delinquent. The county treasurer is required to publish the list of delinquent properties once each week for three consecutive weeks in the official county newspaper or in a newspaper of general circulation in the county. The county treasurer must also publish a notice stating that "the county treasurer will sell the real estate

---

[6] *Butner v. United States*, 440 U.S. 48, 55 (1979).

[7] For the purpose of the following analysis, the Court assumes, but does not hold, that Debtor's limited interests in the Property became property of the estate defined by § 541. Neither party has briefed the question whether these interests were included in the estate, and resolution of that issue is not necessary for the Court to decide the issues presented.

5

described in the list *to the county* for the amount of the delinquent taxes . . . and that the sale will be on or after the first Tuesday of September following publication of the notice. . . ."

K.S.A. 79-2306 describes the process of this "sale" as follows:

> On the day designated in the notice of sale the county treasurer shall sell the real estate on which the taxes and legal charges have not been paid, and it shall be the duty of the county treasurer of such county, to bid off in the name of the county all real estate advertised for sale for delinquent taxes for the amount of the delinquent taxes and the legal charges due thereon, including the costs of advertising and the fees for selling, and no bid shall be received by said county treasurer from any other person for the real estate so sold.

By the plain language of the statute, only the county may bid at this "sale." The purpose of this "sale" is to perfect the county's tax lien and begin the redemption period (see below).

After the county treasurer bids off the delinquent property in the name of the county pursuant to K.S.A. 79-2306, the county must hold the property for a specified period of time before disposing of the property by foreclosure. Abandoned property must be held for one year from the date of the sale; property that is a homestead must be held for three years from the date of the sale; all other real property must be held for two years from the date of the sale.

The period of time during which the county must hold a delinquent property before selling it is the redemption period. During the redemption period, a taxpayer may "redeem" delinquent property by paying all taxes, interest and other fees owing on the property. If the taxpayer does not redeem the property by the close of the redemption period, "the real estate shall be disposed of by foreclosure and sale in

6

the manner provided by K.S.A. 79-2801 *et seq*."

> When a taxpayer fails to redeem delinquent property within the redemption period, the county may petition the district court to enforce the county's tax lien through a foreclosure action. After the foreclosure judgment is rendered, the clerk of the district court issues an order of sale to the county sheriff, directing the sheriff to advertise and sell the delinquent property. A taxpayer has a final opportunity to redeem the property by filing an "application to redeem" with the court no later than the day prior to the sale. A taxpayer has no right to redeem the property after that time.
>
> At the tax sale, the delinquent property "shall be sold at public auction for the highest and best bid obtainable therefor." . . . After the delinquent tax sale is confirmed by the court, the court directs the sheriff to issue a "good and sufficient deed" to the successful bidder.[8]

In this case, Debtor had a right to redeem the Property beginning on the date the County bid off the Property pursuant to K.S.A. 79-2306. When Debtor had not redeemed by January 14, 2016, a foreclosure petition was filed. A foreclosure judgment was entered on April 20, 2016. From the entry of the judgment until the day prior to the sale, which was held on May 26, 2016, Debtor had an additional opportunity to redeem. But Debtor did not redeem. The sale was held, and the Property was sold to a third party. Before the date Debtor filed for bankruptcy relief, Debtor's motion to set aside the foreclosure judgment for lack of proper service on Debtor had been orally denied and the sale had been orally confirmed. All that remained to be done to complete the tax foreclosure and sale was the entry of a written order in conformity with the oral rulings,

---

[8] Kan. Att'y Gen. Op. No. 2012-28, 2012 WL 5816327 (Nov. 13, 2012) (footnotes omitted).

the issuance of a deed to the purchaser, and the distribution of the sale proceeds.

With respect to the Property, the interests of Debtor on the date the bankruptcy was commenced were (1) legal title, since the sheriff's deed had not been issued, and (2) possession subject to the rights acquired by the third-party buyer through the foreclosure and sheriff's sale. Debtor's right to redeem the Property had expired on May 25, 2016.

**B. Cause exists to grant Sedgwick County relief from stay under § 362(d)(1).**

"While cause under § 362(d)(1) includes 'lack of adequate protection' of an interested party in property, it is not so limited. Because 'cause' is not further defined in the Bankruptcy Code, relief from stay for cause is a discretionary determination made on a case by case basis."[9]

Numerous courts have held that cause exists to lift the stay in circumstances similar to Debtor's.[10] Foreclosures to enforce tax liens are similar to mortgage foreclosures. As to mortgage foreclosures, the Tenth Circuit has stated, "At the very least, a mortgage debtor must have some legal or equitable interest in property which

---

[9] *Carbaugh v. Carbaugh (In re Carbaugh)*, 278 B.R. 512, 525 (10th Cir BAP 2002) (citing *Pursifull v. Eakin*, 814 F.2d 1501, 1506 (10th Cir. 1987)).

[10] *E.g., Cook v. Huey,* 506 B.R. 174, 176-77 (N.D.N.Y. 2013) (Debtors' right of redemption had expired under New York law when their home was sold in prepetition mortgage foreclosure sale and possession of home did not give them any legal or equitable interest sufficient to bring home into bankruptcy estate or to trigger protections of automatic stay); *U.S. Bank v. Roberts (In re Roberts)*, 367 B.R. 677, 688 (Bankr. D. Colo. 2007 ("Movant has shown that cause exists for the lifting of the automatic stay under § 362(d)(1) [since] [t]he Debtor's interest in the property is an interest based only on bare possession"); *In re Watts*, 273 B.R. 471, 477 (Bankr. D.S.C. 2000) ("Debtor's lack of equitable and legal interest in the subject property and the fact that a foreclosure sale has already taken place in this case constitutes sufficient cause to grant" creditor's motion for relief from stay).

8

enters the bankruptcy estate if he hopes to retain it through the bankruptcy cure provisions. No court has held that debtors can use the bankruptcy cure provisions to recover property in which they no longer have any interest under state law."[11]

Filing for bankruptcy relief before the expiration of redemption rights is essential if a debtor wishes to retain property that has been the subject of a prepetition foreclosure action. For example, in *Loubier*,[12] a case decided shortly after the Bankruptcy Reform Act of 1978[13] became effective, the court held that a mortgagee creditor who had instituted a foreclosure proceeding before the filing of the debtor's bankruptcy petition was entitled to stay relief even though the debtor was the holder of legal title, since the foreclosure had been completed except for delivery of the deed to the purchaser. The court reasoned that under Connecticut foreclosure law, the property was not part of the bankruptcy estate because before the filing of the bankruptcy petition, the foreclosure sale had been confirmed and the debtor's equity of redemption in the property had been terminated.

Likewise in *Haynes*,[14] similar reasoning was applied where the foreclosure was instituted with respect to a tax lien held by New York City, rather than a mortgage. The putative owner filed for bankruptcy relief after the foreclosure, but before the deed was

---

[11] *In re Thompson*, 894 F.2d 1227, 1229 (10th Cir. 1990).

[12] *New England Bank & Trust Co. v. Loubier (In re Loubier)*, 6 B.R. 298 (Bankr. D. Conn. 1980).

[13] Pub. L. 95-598, 92 Stat. 2549.

[14] *In re Haynes*, 283 B.R. 147 (Bankr. S.D.N.Y. 2002).

9

issued. The city moved for relief from stay in order to convey the property to a third party. The court held that where the time to redeem had expired under New York tax foreclosure law prior to commencement of the debtor's Chapter 13 case, the debtor's only interest in the property on the petition date was bare possession and that was insufficient to warrant the continued protection of the automatic stay. It reasoned that if a bankruptcy petition is filed while the redemption right is unexpired, the equitable right of redemption becomes part of the bankruptcy estate. But, "if at the date of the filing, the right of redemption has already expired, there is nothing there to be included in the bankruptcy estate and there is no right to be protected under the automatic stay."[15]

The Court therefore finds that there is cause to lift the automatice stay to allow the County to ask the state court to file the Journal Entry and to order the distribution of the sale proceeds. When Debtor filed its Chapter 11 petition, the Property had been sold pursuant to the Kansas procedures for the foreclosure of tax liens. The redemption period afforded Debtor had expired. Debtor had only bare legal title and possession subject to the rights of the purchaser at the sale. "The purpose of the automatic stay . . . is to protect the debtor and his creditors by allowing the debtor to organize his affairs, and by ensuring that the bankruptcy procedure may operate to provide an orderly resolution of all claims."[16] This purpose would not be promoted by protecting Debtor's limited interests in the Property.

---

[15] *Id.* at 155.

[16] *Pursifull v. Eakin*, 814 F.2d 1501, 1504 (10th Cir. 1987).

**C. Debtor's arguments that stay relief should be denied based upon the County's alleged failure to properly serve notice of the tax foreclosure sale on the IRS is rejected.**

Debtor's memorandum in opposition to the motion for stay relief argues that the County failed to give proper notice of the tax foreclosure to the IRS, which apparently had a perfected lien on the Property.[17] The County challenges Debtor's arguments that the lack of service on the IRS has a negative impact on the sale. But even if Debtor's allegation is true, such failure to give proper notice would not provide a basis for this Court to set aside the sale or to find that Debtor's post-sale interest in the Property is enhanced.

First, the *Rooker-Feldman* Doctrine precludes this Court from reviewing the state court's confirmation of the sale. Under the *Rooker-Feldman* Doctrine, lower federal courts lack subject matter jurisdiction to hear appeals from final judgments of state courts. That doctrine applies here since Debtor lost in state court, Debtor complains about the loss of the Property caused by the state court judgment, Debtor is inviting review and rejection of that judgment based on the alleged lack of service on the IRS, and the judgment was rendered before the bankruptcy case was filed.[18] Whether the sale should

---

[17] This newly found position is contrary to Debtor's stipulation, quoted above, that "[o]ther than the Debtor's contention concerning service, as set out in the motion to set aside, the foreclosure procedure and the tax sale were in full compliance with Kansas law. The tax sale itself was regularly conducted under Kansas law, with competitive bidding being allowed." Doc. 58 at 2. The Court could reject the arguments concerning service on the IRS because of this stipulation, but declines to do so because Debtor contends it was not aware of the IRS's lien on the Property until the IRS filed its proof of claim.

[18] *See Flanders v. Lawrence (In re Flanders)*, 517 B.R. 245, 246 (Bankr. D. Colo. 2014) (quoting four requirements of *Rooker-Feldman* Doctrine stated in *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 85 (2nd Cir. 2005)).

11

be set aside because of a lack of service on the IRS is a matter for the state court to decide.

Second, improper service on the IRS would not enhance Debtor's post-sale interest in the Property. Rather, the recognition after the sale that the IRS had a lien on the property is likely to reduce Debtor's interest in the sale proceeds remaining after payment of the delinquent real property taxes and the properly assessed costs of the sale.

**CONCLUSION.**

For the foregoing reasons, the Court grants the County's motion for relief from stay to allow the state court to enter the Journal Entry and order the distribution of the sale proceeds. On the date of filing, Debtor's right to redeem the Property had expired. Because Debtor's interest in the Property was limited to bare legal title and possession subject to the rights of the purchaser at the foreclosure sale, cause for relief from stay under § 362(d)(1) exists.

**JUDGMENT**.

Judgment is hereby entered granting Sedgwick County relief from stay to allow the state court to enter the Journal Entry and to order disbursement of the sale proceeds, pursuant to Kansas state law. Pursuant to Federal Rule of Bankruptcy Procedure 4001(a)(3), this judgment is stayed until the expiration of 14 days after the entry of this opinion.

**IT IS SO ORDERED.**

# # #